The Second National Bank of Cincinnati v. R. Hemin-
GRAY ET AL.

Homans & Co., bankers, of Cincinnati, held several notes of R. Hemingray
made in Kentucky, and R. Hemingray & Co., of which R. Hemingray
was the principal partner, kept their bank account with Homans & Co.
By mutual arrangement of the members of the firm, R. Hemingray did
his individual banking business in the name of R. Hemingray & Co., and
kept no bank account in his individual name. Homans & Co., while in
good credit, without the knowledge of Hemingray, or Hemingray & Co.,
transferred, by indorsement, his notes to the plaintiff as collateral secur-
ity for a loan of money, and afterward became insolvent before Hem-
ingray was notified of the transfer. Hemingray & Co. had on deposit
with Homans & Co. $10,000, which R. Hemingray was authorized to use
to pay his notes, one of which was due in July, 1869.
*Held,* that the notes being Kentucky paper, and subject to Kentucky law,
were subject to set-off in the hands of the plaintiff in like manner as if
they were in the hands of Homans & Co.
That separate and joint claims can not ordinarily be set off against each
other, either at law or in equity, but that where there is a natural equity
in favor of such a set-off, and the separate party becomes insolvent,
equity will, to protect such natural equity, permit a set-off to the extent
of the interest of the partner in the joint claim.
*Held,* also, that when there is superadded a course of business, showing
that the parties treated the joint claim as the individual property of the
partner who seeks to make the set-off, or when there is a contract or an
understanding to that effect between the parties, such set-off will be per-
mitted.
That a check by R. Hemingray & Co. for a part of their deposit account to
R. Hemingray, made on the day of the failure of Homans & Co., but
before notice of the transfer of his notes to the plaintiff, was valid to vest
the fund in R. Hemingray, so that he could set it off against his notes in
the hands of the plaintiff, notwithstanding Homans & Co. were then in-
solvent and afterward were declared bankrupts, and that Homans & Co.
being insolvent, R. Hemingray will be allowed to set off said fund against
the notes not due as well as against the note which was due.

RESERVED FROM SPECIAL TERM.—This is a suit brought by
the Second National Bank upon the following note:

"$4,000.                    COVINGTON, KY., *July* 11, 1868.

"One year after date I promise to pay B. Homans, Jr., or order, four thousand dollars, value received, with interest.
                    (Signed,)     "ROBERT HEMINGRAY."

(Indorsed,) "*B. Homans, Jr.*"

This was one of four notes given by Hemingray to B. Homans, Jr., for a house and lot in Covington—one for $5,000, payable in three months, and the three for $4,000 each, payable in one, two, and three years, secured by mortgage. The note for $5,000 had become due, and had been paid to Homans by a check of R. Hemingray & Co. The plaintiff having brought the suit upon the first of the three $4,000 notes, the defendant Hemingray, by his answer and corss-petition, set out the whole transaction, and sought to establish a set-off against the note sued on, and also against the other notes which were not due.

These notes were all made in Kentucky, and of the same form as that which has been recited.

On the 31st day of May, 1869, Homans transferred these, with other notes, to the plaintiff as collateral to his own notes given for a loan of $20,000. This transaction was unknown to the defendants.

When the first note for $4,000 was about to become due, Richard Evans, a partner and the cashier of the firm of R. Hemingray & Co., on behalf of the firm called upon Homans, and said that it would be convenient to have a few days delay in the payment of that note as they were building, and offered to take up the old note and give a new one, or if he required it, to pay the note. Mr. Homans consented to the delay of payment, but preferred to let the old note lie, and to consider it as a loan on call, but said nothing of the assignment of the notes to the Second National Bank.

*Tafel & Throop* and *Lincoln, Smith, Warnock & Stephens,* for plaintiff.

*W. E. Jones* and *Matthews, Ramsey & Matthews,* for defendants.

TAFT, J.  This case was before this court at a former term, when it was determined that the statute of Kentucky, where the notes were made, restricted their negotiability, so that they were liable to the same defenses as they would have been subject to in the hands of the payee, B. Homans, Jr. After that decision the case was remanded to Special Term, and was heard upon the evidence.  The contest turned upon the question whether R. Hemingray had any actual claim to set off against Homans.  A statement of the evidence was made and certified, and the case reserved for the three judges.  The court do not propose again to go into the question of the negotiability of the notes.  It is an important question, and has been differently decided by different courts, and, though a proper question to be considered by the court of last resort, it would not be profitable for us now to reconsider it.  These notes, then, we hold to be Kentucky contracts, and still subject to all the equities which the defendant had against the payee or any assignee before notice of the assignment.  Upon examination of the evidence, we think it is proved that the checks of Hemingray & Co. to R. Hemingray for $9,425.89, as well as that of Captain Evans for $1,800, were given to R. Hemingray, and brought to the notice of Homans before Hemingray knew of the transfer of the notes to the plaintiff, and before the general assignment to Cook for the benefit of creditors, but not before he knew of the insolvency of Homans & Co.  The transfer of the notes to the bank had been made before the first four thousand-dollar note was due, and not only was no notice of the transfer given to Hemingray, the maker, but even the bank notice of the note becoming due, which would naturally have disclosed the holder of the note, was so given as to avoid the communication of that information.  It was objected that the check of R. Hemingray & Co. did not cover the entire deposit, and that it, therefore, did not transfer the fund without the consent of B. Homans & Co.

This court, in the case of *McGregor* v. *Loomis*, 1 Dis.

247, has laid down the rule that the whole, or any part of a fund on deposit with a banker may be assigned and transferred by the check of the depositor, so as to constitute a set-off in favor of the holder of the check against his note in the hands of the banker. We see no reason to question this rule, but believe it to be in strict conformity with the contract of the banker, who receives moneys on deposit, to be drawn out by his customers as they want them. This contract, if not expressed, is implied from the manner in which such funds are uniformly dealt with by both the bankers and depositors. In short, this principle is an essential element in the system of banking upon deposit accounts.

If, then, the checks were not invalidated by the fact of insolvency, nor by the bankruptcy, the deposit accounts transferred by the checks would be available as a set-off against the notes of R. Hemingray.

Before considering the bearing of the insolvency and the bankrupt act upon the transfer by check of the deposit account, we will consider the case as it stands on the natural equities.

It is a general principle, both at law and in equity, that a partnership account can not be set off against a separate liability, notwithstanding the natural equity in favor of the set-off, to the extent of the interest of the partner in the partnership account. The separate liability and the joint claim are not regarded as mutual, and the policy of the law is to avoid confusion, by requiring such claims to be enforced by distinct and separate legal or equitable proceedings. But, when a firm holds a liquidated claim against a creditor of one member of the firm, and the natural equity in favor of such member, to have his share of the partnership claim set off against his individual creditor, is about to be lost by the insolvency of his creditor, such insolvency has been held to be a reason for the interference by a court of equity, to ascertain the extent of the partner's

interest in the partnership claim, and allow it to be set off against the claim of his insolvent creditor.

R. Hemingray was the principal member of the firm of R. Hemingray & Co., owning five-eighths of the stock, while Evans owned three-sixteenths, and Foley three-six-teenths only, and were also indebted to R. Hemingray $3,800, on account of the purchase of their interest. Now, here was a clear natural equity in favor of the set-off, at least to the extent of R. Hemingray's five-eighths interest, in the deposit account, which might exceed the amount of the first four-thousand dollar note.

But there are other circumstances which are disclosed by the evidence, and which are to be considered.

R. Hemingray kept no other individual bank account than that which was kept in the name of R. Hemingray & Co., and, by agreement of the other members of the firm, he used the firm bank account for his individual banking transactions.

One note of R. Hemingray, for $5,000, had matured, and Mr. Evans, the cashier of the firm, had paid it with the firm check. Evans, on behalf of the firm, applied to Homans to have a few days' extension of the note on which this suit was brought, and offered to pay the interest and give a new note, but Homans said it might lie as it was, and be regarded as a loan on call.

Homans told both Evans and Hemingray, after it was known that he had failed, and when he informed defendant (Hemingray) that the notes were in the hands of the plaintiff, that the deposit account was safe, and could be set off against the note, as they were not negotiable. He further testifies that he did not "have a clear distinction between R. Hemingray and R. Hemingray & Co." It is obvious that Homans made no actual distinction between R. Hemingray and the firm, and regarded the deposits by the firm as belonging to R. Hemingray, for the purpose of meeting these notes. He testified that if the firm had attempted to withdraw the entire deposit after one of the

notes had fallen due, without paying it, he should have objected, and prevented it if he could. He, at the same time, testified that he supposed they would have had the right to withdraw the entire deposit.

Meantime these notes had been transferred to the plaintiff, without notice to the defendant. Homans knew that this fund was designed to pay the notes; Homans knew that the notes were not negotiable, and yet he had attempted to negotiate them. He knew that if he informed the defendant or Hemingray & Co. that he had transferred them, this fund would be withdrawn. He withheld this information, which was very important to the defendant, and which, we think, under the circumstances, good faith required that he should communicate.

The question is, whether, under these circumstances, Homans ought to be permitted to defeat the application of this fund to the payment of these notes by way of set-off.

We think that, clearly, he ought not to be permitted to defeat the set-off against the note which was due. We come to this conclusion independently of the checks.

In Waterman's work on Set-off, section 384, and in the note, are stated the circumstances which will induce the court to permit joint and separate demands to be set off against each other; and the leading cases are there cited.

The right was admitted in *Downam* v. *Matthews*, Prec. Chan. 580, "upon the course of dealing;" in *Jeffs* v. *Wood*, 2 P. Wms. 128, upon the fact of the legatee having omitted to credit the executor with the goods supplied. The master of the rolls said, "It is against conscience that A. should be demanding a debt against B., to whom he is indebted in a larger sum, and would avoid paying it." "However, it seems the evidence of an agreement for a stoppage will do; and in these cases equity will take hold of a very slight thing to do both parties right."

But this consideration does not seem to apply to the two notes which were not due. It is hardly to be presumed that this fund was designed to meet payments which would

not be due for one and two years afterward. And in determining whether the set-off shall be allowed against the last two notes, it will be necessary to consider the effect of the checks.

We come now to consider the effect of the checks which were given to R. Hemingray on the afternoon of August 26, 1869. Homans & Co. had stopped payment between twelve and one o'clock. Very soon the report came to Hemingray & Co. They immediately consulted, and made their check for $9,425.89, which they supposed to be the entire amount of their deposit, to R. Hemingray. They afterward discovered that there was still a balance of $266.30, by reason of a collection of which they had not been advised, and they gave an additional check for that amount. Evans also gave his individual check to Hemingray for $1,800, which stood to the individual credit of Evans with Homans & Co. R. Hemingray went with the two checks first made, viz: that of R. Hemingray & Co., for $9,425.89, and that of Evans, for $1,800, to the bank of Homans & Co., and it was shut. Afterward, between four and five o'clock, the same afternoon, he found Homans in Covington, and advised him of the checks, and was then informed that the notes had been transferred to the plaintiff. Between seven and eight o'clock the same afternoon, Homans, who was the only member of the firm of Homans & Co., made a general assignment to Theodore Cook for the benefit of his creditors. A few weeks afterward he was forced into involuntary bankruptcy.

We do not regard the transfer by check of these deposit accounts as preferences by Homans, to defraud creditors, within the 35th section of the bankrupt act, which forbids transfers by the bankrupt after the act of bankruptcy; nor does it fall within the enumeration of acts which are designated in the 39th section of that act, as acts of bankruptcy.

The contest is between the plaintiff and R. Hemingray. Although Hemingray has seen fit to make the assignees in

bankruptcy parties, they have set up no claim. If the answer and the evidence had showed that the assignees were entitled to the notes, by reason of an act of bankruptcy, before the notes were transferred to the plaintiff, making the transfer void, then there would arise a question between the assignees, who might claim the notes, and the defendant Hemingray. But the evidence fails to impeach the title of the Second National Bank to the notes. The bank holds the notes *bona fide* as against the assignees in bankruptcy, and subject only to such equities as Hemingray had at the time he was notified of the transfer; the assignees can have no interest in the controversy. The contest is between the bank and Hemingray only.

The only way in which the plaintiff could avail itself of the bankrupt act to defeat the defendant's right of set-off, would be to admit and prove that it held the notes in fraud of the bankrupt law, and that they, therefore, belonged to the assignees in bankruptcy. Then, as Hemingray knew of the insolvency of Homans when he took the checks, he might not be allowed to set them off against the notes in bankruptcy. But we think that the bank has shown a good title to the notes, notwithstanding the attempt by the defendant, in his answer, to impeach it. As the title to the notes is in the bank, and not in the assignees in bankruptcy, the contest of the defendant is with it, and not with the assignees. If, on the other hand, the answer of the defendant had proved true, and the notes had fallen into the hands of the assignees in bankruptcy, the defendant might have a more difficult task to bring himself within the meaning of section 20 of the bankrupt act, which provides for mutual debts and set-off under that act. *Smith* v. *Hill*, 8 Gray, 572. As we have said, Hemingray had reason to believe that Homans was insolvent when he took those checks, and if he were to set them up against the other creditors, so as to get his pay in full, it would be an unjust advantage over the general creditors by a purchase of a claim made after an act of bankruptcy. But here

the general creditors are not injured or defrauded of any rights.   So far as this deposit account is settled by way of set-off against these notes, held· by the plaintiff, the assignees in bankruptcy are relieved from any obligation to pay dividends upon it.

Objection has been taken to the transfer of these deposit accounts, especially to that of Richard Evans, that they were. not absolute, and did not make Hemingray actual owner of the fund.   The transaction was rather sudden, and without much negotiation as to the consideration to be paid, or the price.   But we are satisfied that it was the purpose of both Hemingray & Co., and of Richard Evans, to transfer to Hemingray all the title they had.   As to the price of the checks, they might have relied upon their legal right to compensation, or they might have relied upon the justice of Hemingray.   They were not unwilling to transfer it to him without reserve, and we think they did so, and that this title was complete.

Our conclusion is, that the checks of R. Hemingray & Co., except the check for $266, which was not given till after notice of the transfer of the notes to the plaintiff, and the check of Richard Evans, were valid and available in the hands of R. Hemingray as a set-off against these notes in the hands of the Second National Bank of Cincinnati.

The insolvency of Homans is a sufficient reason for allowing a set-off against the notes not yet due.

There is another item of money collected by Homans & Co., upon a note of Allen belonging to R. Hemingray individually, and not included in the balance of R. Hemingray & Co.'s deposit account as above. stated.   This item is a proper subject of set-off by R. Hemingray, although it also was deposited for collection in the name of R. Hemingray & Co.

A judgment may be entered in accordance with this opinion.